UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TRAVIS GILLEY and STEPHANIE GILLEY,<br><br>    Plaintiffs,<br>v.<br><br>JPMORGAN CHASE BANK, N.A.; PROVIDENT MORTGAGE CORPORATION; J&J LENDING CORPORATION; AND DOES 1 THROUGH 50, inclusive.<br><br>    Defendants. | Case No.12cv1774 AJB (JMA)<br><br>**ORDER GRANTING IN PART AND DENYING DEFENDANT'S MOTION TO DISMISS**<br><br>(Doc. No. 4) |

  Presently before the Court is Defendant JPMorgan Chase Bank, N.A. ("JPMorgan")'s Motion to Dismiss, (Doc. No. 4), Plaintiffs' Complaint, (Doc. No. 1.)[1] Plaintiffs filed an opposition, (Doc. No. 6), and Defendant filed a reply, (Doc. No. 7). In accordance with Civil Local Rule 7.1.d.1, the Court finds the motion suitable for determination on the papers and without oral argument. Accordingly, the motion hearing scheduled for December 7, 2012 is hereby vacated. For the reasons set forth below, the Court **GRANTS** in part and **DENIES** in part JPMorgan's motion to dismiss.

---

[1] Defendant has also requested the court take judicial notice of four documents, all of which are public records held by the San Diego Recorder's Office. (Doc. No. 4-2.) Under Federal Rule of Evidence 201, a court may take judicial notice of documents outside of the complaint that are capable of accurate and ready determination by resort to sources whose accuracy cannot be reasonably questioned. *See Lee v. City of Los Angeles,* 250 F.3d 668, 668-89 (9th Cir. 2001). A court, however, may decline to take judicial notice of irrelevant facts even if they are matters of public record. *See Ruiz v. City of Santa Maria,* 160 F.3d 543, 548 n. 13 (9th Cir. 1998). Here, although the documents are public records pertaining to the subject property, the Court finds the documents irrelevant for purposes of the present motion. Therefore, Defendant's request is denied.

### ***BACKGROUND***

This is a discrimination action alleging Plaintiffs were denied a loan based on their familial status.[2]  On or about February 13, 2010, Stephanie Gilley and Travis Gilley (collectively, "Plaintiffs"), applied for a real estate mortgage loan ("the Loan") from JPMorgan to refinance their home.  (Compl. ¶ 7.)  The Loan was to be issued for a principal amount of $465,600.00, with an interest rate of 5.625% over a term of 30 years.  (*Id.* ¶ 8.)  Plaintiffs met JPMorgan's financial and credit requirements, and were otherwise qualified to receive the Loan under the above stated terms.  (*Id.* ¶ 9.)  JPMorgan received and accepted Plaintiffs' mortgage loan application fee.  (*Id.* ¶ 10.)  On or about March 5, 2010, an appraiser licensed with the California Office of Real Estate Appraisers appraised Plaintiffs' property using the "cost approach" appraisal method and "market data approach" appraisal method.  (*Id.* ¶ 11.)  Using the "cost approach" method, the property was appraised at $491,171.00, $25,571.00 more than the principal amount of the Loan request.  (*Id.*)  Using the "market data approach," the property was appraised at $480,000.00, $14,400.00 more than the principal amount of the Loan request.  (*Id.*)

Subsequently, on March 19, 2010, JPMorgan notified Plaintiffs that their Loan request had been approved.  (*Id.* ¶ 12.)  However, JPMorgan delayed in processing the Loan, and on May 28, 2010, notified Plaintiffs that it could not count Stephanie Gilley's income while she was on maternity leave.  (*Id.*)  A month later, a loan officer from JPMorgan telephoned Plaintiffs and expressed a belief that the Loan would not be closed.[3]  (*Id.*)  After JPMorgan delayed and refused to close the Loan, Plaintiffs sought the assistance of another loan broker, Catalyst Loans.  (*Id.* ¶ 13.)  Catalyst Loans submitted applications for Plaintiffs to J&J Lending, Provident Mortgage, and Sunwest Bank.[4]  (*Id.*)  Plaintiffs provided a verification of employment for Stephanie Gilley, and a leave of absence form documenting

---

[2] For purposes of the instant motion the facts as alleged in Plaintiffs' Complaint are taken as true.

[3] In opposition to the instant motion, Plaintiffs requested leave of Court to amend the Complaint to include the following language: "By the time Plaintiffs received a reply, approximately one month later, their paperwork and appraisal had expired." (Doc. No. 6, p. 2.)  However, the Court finds that leave is not necessary as the above language does not materially add to the Complaint.  Moreover, in the future, if Plaintiffs seek leave of this Court to amend their pleadings, they are instructed to do so in accordance with the appropriate procedures.

[4] Sunwest Bank is not a defendant in this action.

her maternity leave to J&J Lending and Provident Mortgage. (*Id.* ¶ 14.) Provident Mortgage issued Plaintiffs a conditional approval letter, but delayed closing the loan until Plaintiffs were informed that "the loan with Provident Bank [was] dead." (*Id.* ¶ 20.) By the time Plaintiffs sought a loan from Sunwest Bank, the appraised value of the property had dropped $105,000.00 since the first appraisal, making the property "upside down" because the outstanding debt of the property exceeded its value. (*Id*. ¶¶ 21-22.) This prohibited Plaintiffs from obtaining financing. (*Id.*)

On June 4, 2012, Plaintiffs filed the instant Complaint in San Diego Superior Court alleging two causes of action: (1) violation of the Federal Fair Housing Act ("FHA"), 42 U.S.C. § 3605; and (2) violation of the Unruh Civil Rights Act, Cal. Civ. Code § 51(b). On July 18, 2010, this action was removed to federal court pursuant to 28 U.S.C. § 1441, and on July 25, 2012, Defendant JPMorgan filed the instant motion to dismiss.

## *LEGAL STANDARD*

A motion to dismiss under Rule 12(b)(6) tests the legal sufficiency of the pleadings and allows a court to dismiss a complaint upon a finding that the plaintiff has failed to state a claim upon which relief may be granted. *See Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). The court may dismiss a complaint as a matter of law for: (1) "lack of cognizable legal theory;" or (2) "insufficient facts under a cognizable legal claim." *SmileCare Dental Grp. v. Delta Dental Plan of Cal.*, 88 F.3d 780, 783 (9th Cir. 1996) (citation omitted). A complaint survives a motion to dismiss if it contains "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).

Notwithstanding this deference, the reviewing court need not accept "legal conclusions" as true. *See Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949–50, 173 L.Ed.2d 868 (2009). It is also improper for the court to assume "the [plaintiff] can prove facts that [he or she] has not alleged." *Assoc. Gen. Contractors of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). On the other hand, "[w]hen there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950. The court only reviews the contents of the complaint, accepting all factual allegations as true, and drawing all reasonable inferences in favor of the nonmoving party. *See Al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009) (citations omitted).

## *DISCUSSION*

JPMorgan moves to dismiss all claims against it as untimely and for failure to state a claim upon which relief can be granted. Each cause of action is discussed in turn.

**I.      Federal Fair Housing Act**

    **1.      Statute of Limitations**

Under the federal Fair Housing Act, an individual can commence a private civil action in the appropriate court "not later than 2 years after the occurrence or the termination of an alleged discriminatory housing practice." 42 U.S.C. § 3613(a)(1)(A). A cause of action generally accrues under federal law when a plaintiff knows or has reason to know of the injury which is the basis of his action. *See Cline v. Brusett,* 661 F.2d 108, 110 (9th Cir. 1981). Accordingly, absent a finding of a continuing violation, a FHA claim accrues on the day a plaintiff has suffered a distinct and palpable injury due to the defendant's discriminatory conduct. *See Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372 (1982).[5]

JPMorgan asserts that Plaintiffs' FHA claim is time-barred as filed beyond the two-year statute of limitations.[6] (Doc. No. 4, p. 4.) JPMorgan maintains that the operative date of the "occurrence" is May 28, 2010, when it informed Plaintiffs it could not count Stephanie Gilley's income while she was on maternity leave. (Doc. No. 7, p. 2.) Additionally, JPMorgan contends Plaintiffs have failed to establish the limitations period was tolled, and therefore the statute of limitations expired two years later, on May 28, 2012. Conversely, Plaintiffs allege the statute of limitations did not commence until June 28, 2010, when the appraisal expired and JPMorgan constructively denied their Loan.[7] Thus, the

---

[5] This is in line with the legislative history of the FHA. Although the statute of limitations functions to keep stale claims out of court, it should not be used to undermine "the broad remedial intent Congress embodied in the Act." *Havens Realty Corp.*, 455 U.S. at 380-81.

[6] In the motion to dismiss, JPMorgan asserts, but later abandons, that the alleged discriminatory housing "occurrence" was on the date Plaintiffs first applied for the Loan with JPMorgan. Therefore, the statute of limitations commenced on February 13, 2010. (Doc. No. 4, p. 4.)

[7] Plaintiffs do not contest that JPMorgan never explicitly rejected the Loan before this date.

cause of action did not accrue until June 28, 2012, and the Complaint filed on June 4, 2012 was timely.[8]

Under federal law, Plaintiffs' cause of action accrued when they had reason to know of their injury. *See Brusett,* 661 F.2d 108 at 110. Here, Plaintiffs' injury, which is the basis of this action, was the constructive denial of their Loan due to Stephanie Gilley's familial status. Although Plaintiffs were informed on May 28, 2010, that Stephanie Gilley's income during maternity leave could not be counted, no violation had yet occurred. At this time, it was still possible for Plaintiffs to present alternative income or obtain a co-signer to secure the Loan. Thus, Plaintiffs did not realize their injury until learning the Loan would not be closed on June 28, 2010. Accordingly, at this juncture of the proceeding, the Court finds the limitations period commenced on June 28, 2010, and Plaintiffs' FHA claim is timely as within the two-year statute of limitations.

### 2. Motion to Dismiss Under Rule 12(b)(6)

Under the FHA, "[i]t shall be unlawful for any person or other entity whose business includes engaging in residential real-estate transactions to discriminate against any person in making available such a transaction, or in the terms or conditions of such a transaction, because of race, color, religion, sex, handicap, familial status, or national origin." 42. U.S.C. § 3605(a). Moreover, "[t]he protections afforded against claims of familial status shall apply to any person who is pregnant." 42 U.S.C. § 3602(k).

Claims under the FHA are evaluated under Title VII's burden shifting framework as articulated by the Court in *McDonald Douglas v. Green,* 411 U.S. 792 (1973). *See Harris v. Itzhaki,* 183 F.3d 1043, 1051 (9th Cir. 1999).[9] A prima facie case of disparate treatment requires a showing that: "(1) plaintiff's rights are protected under the FHA; and (2) as a result of defendant's discriminatory conduct,

---

[8] In a footnote in the opposition, Plaintiffs state the limitations period was equitably tolled because JPMorgan's own action (or inaction) caused Plaintiffs to delay filing their case. Because the Complaint is timely, however, the Court need not discuss the application of equitable tolling. Such arguments, however, may be necessary if additional facts regarding the Loan surface during discovery or if either party files a motion for summary judgment. (Doc. No. 6, p. 4.)

[9] A plaintiff in a Title VII action must carry the initial burden of proving a prima facie case of discrimination. *McDonald Douglas v. Green,* 411 U.S. 792, 802 (1973). If the plaintiff establishes the prima facie case, the burden then shifts to the defendant to articulate some legitimate, nondiscriminatory reason for the plaintiff's rejection. (*Id.*)

plaintiff has suffered a distinct and palpable injury." *Id.* Alternatively, to establish a disparate impact claim, a plaintiff must allege: "(1) the existence of outwardly neutral practices; (2) a significantly adverse or disproportionate impact on persons of a particular type produced by the defendant's facially neutral acts or practices; and (3) facts demonstrating a causal connection between the specific challenged practice or policy and the alleged disparate impact." *Pfaff v. U.S. Dept. of Housing and Urban Dev.,* 88 F.3d 739, 745 (9th Cir. 1990). The burden of establishing a prima facie case is not onerous. *See Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253-54 (1981). The plaintiff must only make allegations sufficient to raise an inference or presumption of discrimination. *Id.*

Here, Plaintiffs contend that JPMorgan denied the Loan because of Stephanie Gilley's familial status. (Compl. ¶ 26.) Although JPMorgan never explicitly denied the Loan, Plaintiffs assert JPMorgan constructively denied the Loan by continuing to delay. (Doc. No. 6, p. 3.) Furthermore, because JPMorgan offered no excuse for the delay other than its refusal to accept Stephanie Gilley's income while on maternity leave, Plaintiffs contend there is a reasonable inference that JPMorgan denied the Loan because of Stephanie Gilley's familial status.

Conversely, JPMorgan maintains that the facts as alleged do not support a FHA claim because Plaintiffs have failed to provide any facts of the alleged discrimination other than it "denied the mortgage loan for which Plaintiffs had applied because of the familial status of Stephanie Gilley." (Doc. No. 7, p. 4.) JPMorgan further contends that Plaintiffs never allege that JPMorgan in fact denied the Loan on this basis, or any basis for that matter, and instead only allege that JPMorgan "continued to delay closing the loan." (*Id.* ¶ 12.) Thus, because delays in processing a loan can be expected, and Plaintiffs have offered no evidence that JPMorgan refused the Loan for a discriminatory reason, JPMorgan contends Plaintiffs' FHA claim must fail.

Upon review of the Complaint and the parties' moving papers, the Court finds Plaintiffs have alleged sufficient facts to state a plausible claim for disparate treatment under the FHA.[10] Here,

---

[10] Plaintiffs do not explicitly assert they are alleging a disparate treatment and/or a disparate impact claim. As such, the Court will not assume Plaintiffs can prove facts they have not alleged. Accordingly, as the Complaint does not allege an outwardly neutral practice by JPMorgan, the Court will not assume Plaintiffs can prove such a practice. Therefore, Plaintiffs do not state a plausible disparate impact claim.

Plaintiffs assert that Stephanie Gilley's familial status, as an expectant mother, was protected by the FHA. Furthermore, Plaintiffs allege that they were in all respects qualified to receive the Loan from JPMorgan, as evidenced by the fact that their Loan application had been approved. Moreover, JPMorgan offered no other explanation for the delay in closing the Loan apart from its refusal to accept Stephanie Gilley's income while on maternity leave. Thus, Plaintiffs have alleged enough facts to raise a reasonable inference or presumption of discrimination by JPMorgan. Therefore, the Court finds Plaintiffs have proffered the requirements of a prima facie case under the FHA. Accordingly, the Court **DENIES** JPMorgan's motion to dismiss Plaintiffs' first cause of action alleging a violation of the federal Fair Housing Act.[11]

## II.     Unruh Civil Rights Act

### 1.     Statute of Limitations

The Unruh Civil Rights Act does not contain an express statute of limitations. However, courts commonly apply California's two-year limitations period used for personal injury claims to Unruh actions. *See Hernandez v. Sutter W. Capital*, C 09-03658 CRB, 2010 WL 3385046 (N.D. Cal. Aug. 26, 2010). The statute of limitations for personal injury claims is two years from the date of the injury. Cal. Code. Civ. Proc. § 335.1. "It is well accepted that a limitations period commences when the cause of action 'accrues.' " *Salenga v. Mitsubishi Motors Credit of Am.,* 183 Cal.App.4th 986, 996, 107 Cal.Rptr.3d 836 (2010). Under California law, the "accrual of a cause of action sets the date as the time, when, under the substantive law, the wrongful act is done, or the wrongful result occurs, and the consequent liability arises. In other words, it sets the date as the time when the cause of action is complete with all of its elements." *Norgart v. Upjohn Co.,* 21 Cal.4th 383, 397, 87 Cal.Rptr.2d 453, 981 P.2d 79 (1999).

Here, both parties agree that the statute of limitations under the Unruh Act is two years, yet disagree as to when the limitations period commenced. Similar to the analysis under the FHA above, the statute of limitations for an Unruh Act violation begins when the cause of action accrues, meaning

---

[11] Although the Court finds Plaintiffs have presented enough facts to support a prima facie case under the FHA, Plaintiffs should be cognizant of the proof required to succeed on such a claim if the case goes to trial or on a motion for summary judgment.

when all of the elements of the cause of action have occurred.  As discussed above, Plaintiffs' alleged injury was the denial of the Loan, which did not occur until June 28, 2010, when Plaintiffs were informed by JPMorgan that the Loan would not be closed.  Thus, Plaintiffs' cause of action was complete, and thus accrued, on the date the denial was verbalized to Plaintiffs by JPMorgan's agent.  Accordingly, at this stage in the proceeding, the Court finds that the statute of limitations for Plaintiffs' Unruh Act claim commenced on June 28, 2010, and that the Complaint filed on June 4, 2012, was timely.

### 2. Motion to Dismiss under Rule 12(b)(6)

Pursuant to the Unruh Civil Rights Act, "[a]ll persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever."  Cal. Civ. Code § 51(b).  Under the Act, "sex" includes, but is not limited to, "pregnancy, childbirth, or medical conditions related to pregnancy or childbirth."  § 51(e)(5).  "The term 'business establishments' must properly be interpreted in the broadest sense reasonably possible."  *Curran v. Mount Diablo Council of the Boy Scouts*, 17 Cal.4th 670, 696, 72 Cal.Rptr.2d 410, 952 P.2d 218 (1998) (quotation omitted).  The Act aims to prevent arbitrary or unreasonable discrimination, however the "nature of the business enterprise of the facilities provided has been asserted as a basis for upholding a discriminatory practice *only* when there is a strong public policy in favor of such treatment."  *Koire v. Metro Car Wash*, 40 Cal. 3d 24, 31-32, 707 P.2d 195 (1985).  For example, a commercial lending institution has a sufficient interest in protecting its investment to justify making distinctions among its customers when deciding the appropriate criteria in issuing a loan.  *See Semler v. Gen. Elec. Capital Corp.,* 196 Cal. App. 4th 1380, 1402-03, 127 Cal. Rptr. 3d 794, 811 (2011).

To maintain a violation of the Unruh Civil Rights Act independent of an Americans with Disabilities Act claim, a plaintiff must plead "intentional discrimination in public accommodations in

violation of the terms of the Act."[12] *Munson v. Del Taco, Inc.,* 46 Cal.4th 661, 668, 94 Cal.Rptr.3d 685, 208 P.3d 623 (2009) (quoting *Harris v. Capital Growth Investors XIV,* 52 Cal.3d 1142, 1175, 278 Cal.Rptr. 614, 805 P.2d 873 (1991)). At the pleading stage, a plaintiff must allege "willful, affirmative misconduct;" thus, allegations of the disparate impact of a facially neutral policy on a particular group are not sufficient. *See Koebke v. Bernardo Heights Country Club,* 36 Cal.4th 824, 854–54, 31 Cal.Rptr.3d 565, 115 P.3d 1212 (2005). To do so, a plaintiff must show that: "(1) he was denied the full and equal accommodations, advantages, facilities, privileges, or services in a business establishment; (2) his disability was a motivating factor for this denial; (3) defendants denied plaintiff the full and equal accommodations, advantages, facilities, privileges, or services; and (4) defendants' wrongful conduct caused plaintiff to suffer injury, damage, loss or harm." *Johnson v. Beahm,* No. 2:11–cv–0294–MCE–JFM, 2011 WL 5508893, at *4 (E.D.Cal. Nov. 8, 2011) (citing California Civil Jury Instructions (BAJI), No. 7.92 (Spring 2009)).

Plaintiffs contend that because JPMorgan is a business establishment and Stephanie Gilley was an expectant mother at the time, the alleged violation falls within the purview of the Unruh Act. As previously discussed, JPMorgan's denial of Plaintiffs' Loan by continued delay and the statement that it could not accept Stephanie Gilley's income during her maternity leave raises an inference of discrimination. Thus, Plaintiffs maintain that JPMorgan denied the Loan on the basis of sex, in violation of the Unruh Act. (Compl. ¶¶ 31-33.) In response, JPMorgan contends that Plaintiffs have failed to include factual allegations showing that JPMorgan's denial of Plaintiffs' Loan was motivated by Stephanie Gilley's sex. The Court is inclined to agree.

Here, the delay in processing Plaintiffs' Loan could be based on a variety of factors. Plaintiffs have failed to allege that JPMorgan denied the Loan because she was pregnant and/or on maternity leave, or that it would have refused the Loan if Plaintiffs could have shown additional income or presented a co-signor. Furthermore, Plaintiffs has failed to allege that JPMorgan never offered loans to individuals on maternity leave if such individuals have presented income sufficient to support the loan.

---

[12] "Any violation of the ADA necessarily constitutes a violation of the Unruh Civil Rights Act. Cal. Civ.Code § 51(f)." *Johnson v. Singh*, 2011 WL 2709365.

Simply alleging Stephanie Gilley was on maternity leave and JPMorgan would not accept her income while on maternity leave does not present sufficient evidence that familial status was a "motivating factor" for JPMorgan's decision to deny the Loan. Thus, Plaintiffs' allegations do not adequately suggest JPMorgan arbitrarily and intentionally discriminated against Plaintiffs in violation of the Unruh Act. Accordingly, the Court **GRANTS** JPMorgan's motion to dismiss Plaintiffs' second cause of action alleging a violation of the Unruh Civil Rights Act, ***with leave to amend***.

### *CONCLUSION*

For the reasons mentioned above, the Court **GRANTS** in part and **DENIES** in part Defendant's motion to dismiss. Plaintiffs may file an amended complaint in conformance with this order no later than November 10, 2012. Defendant will then have thirty (30) days from the filing of the amended complaint to respond or otherwise answer.

IT IS SO ORDERED.

DATED: October 12, 2012

_____
Hon. Anthony J. Battaglia
U.S. District Judge